Filed 3/2/15  Durant v. Padre Dam Municipal Water Dist. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DIANE DURANT, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> PADRE DAM MUNICIPAL WATER DISTRICT, <br><br> Defendant and Respondent. | D065088 <br><br><br> (Super. Ct. No. 37-2012-00093484-CU-OE-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed.

Haineslaw and Laurence F. Haines for Plaintiff and Appellant.

Best Best & Krieger, Alison D. Alpert and Sarah R. Lustig for Defendant and Respondent.

Plaintiff Diane Durant was an engineering technician employed by defendant Padre Dam Municipal Water District (District).  In her first amended complaint, Durant alleged that the District retaliated against her for filing two complaints with the Equal

Employment Opportunity Commission (EEOC) (and the related state filing with the Department of Fair Employment and Housing (DFEH)) in violation of California's Fair Employment and Housing Act (FEHA), Government Code section 12940 et seq. The trial court granted summary judgment in favor of the District, and Durant appeals. She argues that, because she presented admissible evidence of a pretext for the District's nondiscriminatory explanation for the adverse employment decision, the court erred in granting summary judgment. We disagree and affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND[1]

A.    *The District and Its July 2011 Deficit Elimination Plan*

The District is a public agency with a billion dollar infrastructure that provides water, wastewater, recycled water and recreation services to residents in certain suburbs of San Diego.

An elected five-member board of directors (Board) is responsible for adoption of a budget and setting reserves for the District. Typically, the Board adopts a five-year budget, which approximates $53 million annually, and the Board is presented with an updated budget for approval each year. The Board, which hires and has delegated the day-to-day operations to a manager, must approve any memorandum of understanding

---

[1]    For facts, we have disregarded the parties' record reference citations to the various separate statements in support of and in opposition to the motion for summary judgment. Citations in separate statements are not *evidence* of anything; they are "mere assertion[s]." (*Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1024.)

(MOU) with the Padre Dam Employees Association (PDEA), the employee association that represented Durant (and all employees other than those designated management, mid-management or confidential, who are represented by a different association).

By mid-2011, near the end of the District's 2010-2011 fiscal year, the District was facing what its general manager described as "unprecedented financial and operational challenges." In part, these challenges included a 34 percent decline in water sales compared to budget projections ($28.4 million over five years) combined with significant deficit spending. We do not need to go into further detail, given that Durant's counsel "stipulate[d] that the . . . District had financial problems, and they had to save money and they put out a layoff plan." We understand this "layoff plan" to be part of the formal 14-page Deficit Elimination Plan (Plan), which the Board unanimously approved in July 2011 following a period of significant deficit spending.

Among other actions, the Plan included payroll reductions of $776,000 in the first year (by the end of June 2012) and $2.5 million in the second year (by the end of June 2013). To this end, the Plan called for the elimination of 26 positions District-wide (for a 19 percent reduction in staff positions) by the end of June 2013, as follows: the District had six and a half vacancies that would remain unfilled; by July 2012, the District would eliminate ten and a half positions; and by July 2013, the District would eliminate another nine positions.

The Plan also proposed a deferral in capital improvements of approximately $12.6 million, which would significantly reduce the workload in the engineering department. Based on input from a management team, including the director of

3

engineering and the manager of engineering, the District determined that only one of the four existing engineering technician positions in the planning and design division was necessary.[2] Then, based on input from the District's human resources director, who negotiated with both of the District's employee associations and who accepted the PDEA's interpretation of the pertinent provision in the applicable MOU, the District decided to base the layoffs on seniority.

Meanwhile, also in July 2011, the District instituted what it called an "Exit Incentive Program," pursuant to which *any* employee could voluntarily resign and receive a severance package that included six months' pay and benefits. The District had hoped that, through voluntary attrition, there would be fewer layoffs under the Plan. In the end, any employee the District intended to lay off during the first year was expressly notified of the impending layoff and offered the exit incentive.

B.      *Durant's Employment with the District*

The District hired Durant in 2005 as an engineering technician. The District's engineering department has two groups: (1) the planning and design division (see fn. 2, *ante*); and (2) the development services and field engineering group. Durant was hired to work in the planning and design division, commonly referred to as the CIP Group.

In September 2010, Durant filed an EEOC (and related DFEH) complaint, alleging that she had been denied a merit increase in pay based on her gender. In April 2011,

_____

[2]      The planning and design division primarily focused on the District's capital improvement plan (CIP), the foundation of the District's long-range capital investments and financial planning.

Durant filed a second EEOC (and related DFEH) complaint, alleging she had been harassed by her immediate supervisor in retaliation for having filed the September 2010 EEOC complaint.

In relevant part, effecting the Plan in July 2011 resulted in the September 2011 layoff of the least senior technician in the CIP Group, Durant.[3]  In July 2011, the District met with Durant and offered her the same exit incentive of six months' benefits and pay that was offered to all employees who faced the possibility of being laid off pursuant to the Plan.[4]

C.     *Durant Sues the District for Unlawful Employment Practices*

In one cause of action, Durant alleges that she suffered damages as a result of the District's retaliation against her for having filed the two complaints with the EEOC and DFEH (together, the EEOC complaints), in violation of Government Code section 12940, subdivision (h).[5]

---

[3]     Although Durant states as fact that she was "the only employee of [the District] who was laid off," the record reference she provides merely asserts that she was the only permanent employee who "did not take the Exit Incentive."

[4]     After Durant received formal notice of the layoff and the exit incentive, but before the effective date of the layoff, PDEA filed a grievance on her behalf in August 2011. The District denied the grievance the next month.

[5]     Government Code section 12940, subdivision (h) includes as "an unlawful employment practice" an employer's discrimination against any person on the basis that "the person has filed a complaint . . . in any proceeding under this part."  Durant alleges that the filing of the EEOC complaints are such protected proceedings; and for purposes of this appeal, we assume without deciding that they are.  (See *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 420, 422, 428 [alleged adverse employment action in retaliation for filing an age discrimination complaint with EEOC];

Following discovery, the District filed a motion for summary judgment, including in support a memorandum of points and authorities, a separate statement of undisputed material facts, five declarations and 59 exhibits.  As relevant to the issues in this appeal, the District argued that it had legitimate nonretaliatory reasons for approval of the Plan, which resulted in Durant's layoff — namely, the District's "unprecedented financial and operational challenges."

Durant filed an opposition consisting of a memorandum of points and authorities, a response to the District's separate statement, a lengthy declaration (and a notice of erratum) and eight exhibits.  As relevant to the issues she raises in this appeal, Durant argued that the District's stated reason for the layoff — namely, "lack of work" — was a pretext, and in fact the layoff was in retaliation for the filing of the EEOC complaints.[6] In particular, Durant relied on seven lines of what appears to be four nonconsecutive pages from a partial transcription of a March 2011 recorded statement from Courtney Mael (Mael transcription), a District engineering technician.  Durant argued that the Mael transcription established that the engineering department "was 'overloaded' with work, that there was a need to 'relieve the work load', there was a need to 'alleviate our

*Addy v. Bliss & Glennon* (1996) 44 Cal.App.4th 205, 217 [employee "can show she engaged in protected activity" under federal counterpart to § 12940, subd. (h), by "filing a charge of discrimination with the EEOC"].)

[6]     This argument, which Durant repeats on appeal, suggests a disconnect between the parties' positions.  The District's stated nondiscriminatory reason was *a financial and operational one* based on a decline in sales and deficit spending, whereas Durant characterizes the District's reason as a *lack of work*.

workload' and 'we're getting inundated . . . so we're kind of . . . overwhelmed right now.' "
According to Durant, these statements presented a material issue of fact with regard to whether the District's stated reasons were in fact the basis of Durant's layoff or whether Durant was laid off due to the EEOC complaints.

In reply, the District filed a memorandum of points and authorities, a reply to Durant's response to the District's separate statement and objections to the evidence proffered by Durant. In particular, the District argued: Durant failed to produce *admissible* evidence of a pretext to the stated nondiscriminatory reasons for laying her off;[7] and, accordingly, Durant failed to meet her burden of establishing that the District's proffered reason for her layoff was a pretext for retaliation.

The trial court issued a tentative decision, granting the District's motion for summary judgment. The court heard lengthy oral argument, taking the matter under submission. By minute order filed later that day, the court confirmed its tentative decision and granted summary judgment in favor of the District, in pertinent part sustaining the District's evidentiary objections to the Mael transcription and ruling that Durant did not meet her burden of establishing a pretext. The court then entered judgment on the order, dismissing the action and awarding the District statutory costs.

Durant timely appealed.

---

[7]     As we explain *post*, on appeal Durant's sole argument is that the court erroneously sustained the District's evidentiary objections to the Mael transcription.

## II.

## DISCUSSION

A.    *Standards of Review*

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers *except that to which objections have been made and sustained*." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334, italics added (*Guz*).)

"We review the trial court's evidentiary rulings on summary judgment for abuse of discretion." (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679.)  A trial court abuses its discretion only when, in its exercise, the trial court "exceeds the bounds of reason," such that " ' "no judge could reasonably have made the order that he [or she] did." ' "  (*Ibid*.)  Durant, as the appellant, bears the burden of establishing an abuse of discretion, which requires more than presenting merely a " 'state of facts which simply affords an opportunity for a difference of opinion.' "  (*Id.* at p. 680.)

B.    *General Principles*

California law prohibits an employer from terminating an employee in retaliation for "ha[ving] filed a complaint . . . in any proceeding under this part." (Gov. Code, § 12940, subd. (h).)  For purposes of this appeal, we have assumed without deciding that the EEOC complaints are such proceedings.  (See fn. 5, *ante*.)

Claims of retaliatory discrimination and any defenses thereto are presented under a three-stage burden-shifting test formulated by the United Stated Supreme Court in

8

*McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 and adopted by the California

Supreme Court in *Guz*, *supra*, 24 Cal.4th at page 354. The *McDonnell Douglas* test

"reflects the principle that direct evidence of intentional discrimination is rare, and that

such claims must usually be proved circumstantially. Thus, by successive steps of

increasingly narrow focus, the test allows discrimination to be inferred from facts that

create a reasonable likelihood of bias and are not satisfactorily explained." (*Guz*, *supra*,

at p. 354.)

We know from *Guz* that "the *McDonnell Douglas* test places on the plaintiff the

initial burden to establish a prima facie case of discrimination." (24 Cal.4th at p. 354.)

As applicable here, "in order to establish a prima facie case of retaliation under the

FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the

employer subjected the employee to an adverse employment action, and (3) a causal link

existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal*

*USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*); see *Guz*, at pp. 354-355.)

If the employee can establish a prima facie case, then "the burden shifts to the

employer to rebut the presumption [of discrimination] by producing admissible evidence,

sufficient to 'raise[] a genuine issue of fact' and to 'justify a judgment for the [employer],'

that its action was taken for a legitimate, nondiscriminatory reason." (*Guz*, *supra*, 24

Cal.4th at pp. 355-356; see *Yanowitz*, *supra*, 36 Cal.4th at p. 1042 ["the employer is

required to offer a legitimate, nonretaliatory reason for the adverse employment action"].)

"If the employer sustains this burden, the presumption of discrimination disappears."

(*Guz*, at p. 356.) At that point, "the burden shifts back to the employee to prove

9

intentional retaliation." (*Yanowitz*, at p. 1042; see *Guz*, at p. 356 [employee may "attack the employer's proffered reasons as pretexts for discrimination, or . . . offer any other evidence of discriminatory motive"].)

C.     *Summary Judgment Was Proper*

The above-described *McDonnell-Douglas* test is modified for a moving defendant in the summary judgment context. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861 (*Serri*).) Because the moving party on a motion for summary judgment must show that the action has no merit (Code Civ. Proc., § 437c, subd (a)), when an employer defendant moves for summary judgment in an employment discrimination case, the employer bears the initial burden of showing *either* (1) that the employee cannot establish an element of her prima facie case, *or* (2) that there was a legitimate, nondiscriminatory reason for the employment decision. (*Serri*, at p. 861; see *Guz, supra*, 24 Cal.4th at pp. 355-356.) Here, the District attempted to meet both burdens in the trial court by arguing: (1) Durant could not establish an element of her prima facie case, namely the causal nexus between the filing of the EEOC complaints and her layoff; and (2) the District established a legitimate nondiscriminatory reason for Durant's layoff. The trial court granted the District's motion on both grounds, and with regard to the second, the court ruled that Durant did not meet her responsive burden of establishing a pretext or other discriminatory motive for the layoff.[8]

---

8     The court ruled that Durant did not meet her burden of establishing a pretext, because "[t]he mere showing of the nexus in time between . . . [the EEOC] complaints and her termination is not enough to rebut the legitimate reasons provided by [the

In defense of the judgment, the District raises both arguments in this appeal. Because we agree that the District established a legitimate nondiscriminatory reason for Durant's layoff and Durant did not present *admissible* evidence of a discriminatory motive, we express no opinion as to whether Durant could establish the requisite causal nexus between the filing of the EEOC complaints and her layoff.  (See *Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 631, fn. 6 [where summary adjudication properly granted on one ground, reviewing court need not decide additional ground urged by respondent].)

For purposes of the following analysis, therefore, we will focus first on the District's burden of establishing a legitimate nondiscriminatory reason for the layoff and then on Durant's burden of establishing a pretext for the District's stated reason.  (*Guz, supra*, 24 Cal.4th at pp. 354-356; *Yanowitz, supra*, 36 Cal.4th at p. 1042.)

1.    *The District Established a Legitimate Nondiscriminatory Reason for Durant's Layoff*

For purposes of determining whether an employer's allegedly nondiscriminatory reason is "legitimate," *Guz* teaches that it must be one that is "*facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding *of discrimination*." (*Guz, supra*, 24 Cal.4th at p. 358; *Serri, supra*, 226 Cal.App.4th at p. 861.)  Economic factors, including an employer's decision to reduce the workforce, are common legitimate

District]."  In our de novo review, however, " ' "we are not bound by the trial court's stated reasons or rationales." ' "  (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67.)  Because we are affirming on different grounds — namely, those raised and briefed by the parties — we express no opinion on the trial court's stated reason.

reasons proffered by employers for discharging an employee. (E.g., *Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1731-1732 [cutback in government contract spending, necessitating reduction in size of active work force, was legitimate business reason for discharging employee].)

As previewed *ante*, on appeal Durant has challenged only the court's ruling on the admissibility of the evidence that Durant contends establishes a sufficient pretext to the District's proffered reasons for the layoff. Thus, she has forfeited any right to challenge the legitimacy of the District's proffered nondiscriminatory reasons. (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 [even where review is de novo, it is nonetheless "limited to issues adequately raised and supported in the appellant's brief"].)

In any event, we are satisfied that the District met its burden of establishing a legitimate nondiscriminatory reason for laying off Durant. The District presented significant uncontradicted evidence of its "unprecedented financial and operational challenges" near the end of the 2010-2011 fiscal year, resulting in a period of deficit spending and the recognition that the District would have to "reorganize and learn to do business with significantly less revenue." To this end, an informed Board unanimously approved the Plan that required payroll reductions of $776,000 in the first year and $2.5 million in the second year, which translated to the elimination of 26 positions District-wide (for a 19 percent reduction in staff positions) by the end of the second year. Following input from a management team, the District determined that only one of the four existing engineering technician positions in the CIP Group was necessary; and based

12

on a pertinent provision in the applicable MOU, the District decided to base the layoffs on seniority. Given the seniority of engineering technicians in the CIP Group, the District laid off Durant.

2. *Durant Failed to Meet Her Burden of Presenting Admissible Evidence That the District's Stated Nondiscriminatory Reason Was Pretextual*

In order to rebut the employer's asserted reason for an adverse employment action, an employee must present substantial responsive *admissible* evidence of intentional retaliation or pretext.[9] (*Guz*, *supra*, 24 Cal.4th at p. 356; *Yanowitz*, *supra*, 36 Cal.4th at p. 1042.) In this appeal, the only evidence at issue is contained within the Mael transcription — four, 25-lined, double-spaced, nonconsecutive, typewritten pages.

As background, the District hired The HR Agency to conduct an independent investigation of a March 2011 claim of harassment (hostile work environment) filed by Durant as a formal grievance under the applicable MOU, alleging retaliation by one of her superiors for the filing of the first of the EEOC complaints. According to The HR Agency's written report, one of the people interviewed was Mael, identified by the agency as the "Lead Engineering Technician/Plan Checker" in the development services and field engineering group. The HR Agency recorded the one-hour interview, but never transcribed it. According to Durant's attorney (at oral argument in the trial court and in

---

[9] We will assume, without deciding, that Durant's attempt to establish a pretext was responsive to the District's stated reason for the layoff. (See fn. 6, *ante*.) Our disposition of the appeal is based on the *admissibility* of the evidence Durant submitted in response to the District's stated reason, not whether if admissible it would establish a pretext.

13

Durant's opening brief on appeal),[10] the District produced a copy of the recording in discovery, and Durant paid a certified shorthand reporter to transcribe the recording.[11]

On appeal, the *entirety* of the evidence on which Durant relies is seven lines from the Mael transcription; and the *entirety* of Durant's argument, which includes the substance of the seven lines, is:

> "Courtney Mael told The HR Agency on March 9, 2011[,] that his engineering group was 'overloaded' with projects and that 'we were getting inundated with these county and city projects so that we're kind of — we're kind of overwhelmed right now[.]'

> "The underlying lawsuit in this matter claims that, based on the complaints made by [Durant], she was terminated from her employment in a retaliatory manner. [*The District*] *indicates that there was a non-retaliatory reason for the layoff [lack of work]*.[12] Courtney Mael's interview with The HR Agency indicates that there was not a lack of work for Engineering Technicians. This is a dispute over a material fact which should be left for a jury to decide; was there or was there not work for [Durant] to do if she had not been laid off. [¶] . . . [¶]

> "*Once Mr. Mael's statements are admitted* [*into evidence*] *it becomes obvious that they run counter to the reason which* [*the District*] *has given for* [*Durant's*] *termination*[:] *lack of work.* Once the 'lack of work' reason is

10    Unsworn statements of counsel, of course, are not evidence. (*In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11.)

11    Based on its entire investigation, The HR Agency prepared a 64-page written report, ultimately concluding that "Ms. Durant's complaints are not sustained[,]" because there was "no evidence to support a finding of harassment (hostile work environment) created by [Durant's superior]."

12    The District does not contend that it laid off Durant based on a "lack of work." In the original notice to Durant in August 2011, in the superior court motion and even now on appeal, the District has consistently stated its nondiscriminatory reason to be the "unprecedented financial and operational challenges" that caused the Board to reduce both the payroll and the capital improvement budget.

shown to be pretextual, then a reasonable jury may infer the real reason for the termination was retaliatory."  (Italics added.)

In the summary judgment proceedings, the trial court sustained the District's timely objections to the four-page Mael transcription, based on lack of foundation (Evid. Code, § 403),[13] lack of authentication (§§ 1400, 1401, subd. (a)), relevance (§§ 210, 350) and hearsay (§ 1200).  Because the trial court did not abuse its discretion in excluding the Mael transcription, summary judgment was proper.

a.    *Foundation, Authenticity and Relevance*

Section 403, subdivision (a) required Durant to provide the trial court with foundational evidence as to the existence of the preliminary facts establishing the authenticity and relevance of the Mael transcription.[14]  (See *People v. Rundle* (2008) 43 Cal.4th 76, 130 [when party proffers evidence the admissibility of which depends on the existence of preliminary facts, that party bears the burden of producing evidence of such facts].)  However, Durant submitted no evidence of any sort related to the Mael transcription.  Instead, at the hearing, Durant's counsel argued only that the District does

---

[13]    Further undesignated statutory references are to the Evidence Code.

[14]    "The proponent of the proffered evidence has the burden of producing evidence as to the existence of the preliminary fact, and the proffered evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact, when:  [¶] (1) The relevance of the proffered evidence depends on the existence of the preliminary fact; [¶] (2) The preliminary fact is the personal knowledge of a witness concerning the subject matter of his testimony; [¶] (3) The preliminary fact is the authenticity of a writing; or [¶] (4) The proffered evidence is of a statement or other conduct of a particular person and the preliminary fact is whether that person made the statement or so conducted himself."  (§ 403, subd. (a).)

15

not contend the Mael transcription is "an inaccurate representation [of what Mael] said." That, however, is not the standard. The District did not have the burden of establishing the *inaccuracy* of the Mael transcription; after the District objected, section 403, subdivision (a) required Durant to establish the requisite foundational facts to ensure the *accuracy* of the document. Otherwise, "the proffered evidence is inadmissible." (*Ibid.*) Because the court properly sustained the objection as to foundation, we could end our discussion here. We will, nonetheless, briefly discuss why, without a proper foundation, the Mael transcription was neither properly authenticated nor relevant.

As to authentication, there must "be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered." (*People v. Goldsmith* (2014) 59 Cal.4th 258, 267; see §§ 1400, 1401, subd. (a).[15]) Here, however, there is no evidence that the Mael transcription "was created and produced by [the District]," as argued by Durant. The only *evidence* is that The HR Agency created an original tape recording of an interview with Mael on March 9, 2011, and that a certified shorthand reporter provided a transcript that "was reported by [her] stenographically and was transcribed through computerized transcription under [her] direction." There is *no evidence* as to what happened to the original tape recording or how the transcription came into being. Because Durant did not submit "*evidence*

---

[15]    "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (§ 1400.)

"Authentication of a writing is required before it may be received in evidence." (§ 1401, subd. (a).)

16

sufficient to sustain a finding" that the four nonconsecutively numbered pages that comprise the Mael transcription were what Durant claimed them to be — namely, an accurate transcription of what was said during The HR Agency's interview of Mael[16] — Durant failed to authenticate the document. (§ 1400, italics added.) Thus, neither the tape nor the Mael transcription, the alleged secondary evidence of what was recorded, was authenticated.[17]

As to relevance, only evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action" is admissible. (§§ 210, 350.)[18] Durant's entire argument as to relevance is that the above-described statements from the Mael transcription "are highly relevant to indicate that the reason given by [the District] for [Durant's] layoff were pretextual." However, the reason given by the District was *not* a "lack of work" as Durant contends. Rather, the District's position, supported by uncontradicted evidence, has consistently been that the

---

[16]    We note that there is no contention that Mael's statements were made under oath or otherwise admissible as testimony, and The HR Agency's report suggests otherwise.

[17]    We decline Durant's implied invitation in her reply brief that we take judicial notice of the "certified" transcript. (Cal. Rules of Court, rule 8.252(a) [to seek judicial notice, "a party must serve and file a separate motion"]; *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 ["Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant."].)

[18]    " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (§ 210.)
       "No evidence is admissible except relevant evidence." (§ 350.)

17

"unprecedented financial and operational challenges" — more specifically, a 34 percent decline in water sales compared to budget projections ($28.4 million over five years) combined with significant deficit spending — was the nondiscriminatory reason for the Board's decision to reduce both the payroll and the capital improvement budget, which resulted in Durant's layoff. Mael's workload in February is not relevant to establishing a pretext for more than $15 million in decisions made by a unanimous Board five months later in July that adversely affected Durant's employment in September. Further, even if we look *only* to workload, the statements in the Mael transcription do not "hav[e] any tendency in reason to prove or disprove" that work was available to Durant (§ 210), because Mael worked in the development services and field engineering group, whereas Durant worked in the CIP Group. Thus, the statements attributed to Mael regarding workload are irrelevant to a determination whether the District's stated reason for approving the Plan — namely, the "unprecedented financial and operational challenges" the District was facing — was a pretext for laying off Durant.

### b. *Hearsay*

The hearsay rule requires that hearsay evidence is inadmissible, except as provided by law. (§ 1200.) Durant acknowledges that the Mael transcription contains hearsay, but relies on the exceptions found in sections 1271 and 1220. However, neither exception is applicable.

Durant contends that section 1271,[19] sometimes referred to as the business records exception to the hearsay rule, applies because (according to Durant) the recording of the interview was "conducted pursuant to an investigation into [Durant's] complaints" and "made in the regular course of business by either The HR Agency or [the District] or both." Even though Durant cites to no evidence in support of either statement, we do not base our decision solely on this misstep. Durant's reliance on section 1271 fails because there is no evidence either that "[t]he custodian or other qualified witness testifie[d] to [the recording's] identity and the mode of its preparation" or that "[t]he sources of information and method and time of preparation were such as to indicate its trustworthiness." (§ 1271, subds. (c), (d).)

Durant next contends that section 1220,[20] sometimes referred to as an admission of a party opponent exception to the hearsay rule, applies because the statements in the Mael transcription were "made in the course and scope of [Mael's] employment during the investigation and [were] made as an agent/employee of [the District] regarding

---

[19]    "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness." (§ 1271.)

[20]    "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity." (§ 1220.)

19

working conditions at [the District]."  Even assuming Durant presented evidence regarding "the course and scope of [Mael's] employment" and his status as "an employee/agent of [the District]" (which she did not), the exception still does not apply. As the District correctly counters, the hearsay statements may only be attributed to the District (as employer/principal) upon an evidentiary showing that the District authorized Mael to make a statement concerning the workload of the District's development services and field engineering group.  (§ 1222, subd. (a).)[21]  Durant has not acknowledged this requirement, let alone attempted to cite evidence that satisfies this requirement.

     3.    *Conclusion*

We recognize that "direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially," at times requiring the court to infer from the facts "a reasonable likelihood of bias."  (*Guz*, *supra*, 24 Cal.4th at p. 354.)  Here, the District established a legitimate nondiscriminatory reason for laying off Durant, but we are unable to infer the requisite bias to defeat the District's motion for summary judgment, because Durant did not present admissible evidence of what she contended would suggest a pretext to the District's stated reason.

---

[21]    "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if:  [¶]  (a) The statement was made by a person authorized by the party to make a statement or statements for him concerning the subject matter of the statement;  . . . ."  (§ 1222.)

DISPOSITION

The judgment is affirmed.  The District is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


IRION, J.

WE CONCUR:


McDONALD, Acting P. J.


O'ROURKE, J.